# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

FILED SEP 2 0 2010 CLERK, U.S. DISTRICT COURT ALEXANDRIA, VIRGINIA

Ocary Braithwaite, )
    Plaintiff, )
     )
v. ) 1:09cv879 (TSE/JFA)
     )
George M. Hinkle, et. al. )
    Defendants. )

## MEMORANDUM OPINION

Ocary Braithwaite, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that his First Amendment right to free exercise of religion and his Eighth Amendment right to reasonable medical care are being violated because defendants prohibit plaintiff from growing a beard. By Order dated January 26, 2010, plaintiff's Eighth Amendment claims were dismissed, and that dismissal was upheld on appeal by the Fourth Circuit. Braithwaite v. Hinkle, et al., No. 10-6201 (4th Cir. June 10, 2010).[1] The remaining defendant, George Hinkle, filed a Motion for Summary Judgment as to the remaining First Amendment claim, and plaintiff filed a response. For the reasons stated below, defendant's Motion for Summary Judgment must be granted.

### I. Background

Plaintiff, a Sunni Muslim, is incarcerated at the Greensville Correctional Center ("GCC"). He suffers from "pseudo folliculitis barbe" ("PFB"), a skin condition which plaintiff alleges causes pain, bumps, and irritation upon shaving. Soon after arriving at GCC, plaintiff sought exemption from the inmate grooming policy, which requires inmates to shave unless exempted by the medical

---

[1] In addition, original defendants Dr. Thompson, Benjamin Ellis, Gerard Boyle and Nurse D. Spears were dismissed as parties to the action in the January 26 Order.

department, on the basis of his PFB. Plaintiff received an exemption from the grooming policy for six months. He routinely reapplied for exemptions, as is required by GCC, and they were granted until April 7, 2009, when GCC denied plaintiff an exemption. On August 28, 2009, Lt. Powell, who is not named as a defendant, ordered plaintiff to shave. When plaintiff refused "due to his severe skin condition," Powell placed plaintiff in segregation for twenty-seven days. Plaintiff was released from segregation when a physician granted plaintiff a medical exemption from the shaving policy. [2] Plaintiff asserts that wearing a beard is "in accordance with the tenets of the Holy Qur'an and the 'Sunni' (legal practice and ways) of Prophet Muhammad (PBUH)." Am. Compl. 3.

In support of his Motion for Summary Judgment, defendant supplies an affidavit and supporting exhibits describing the VDOC grooming policy at issue. The policy, OP 864.1, was modeled after the South Carolina Department of Corrections grooming policy that was upheld as constitutional by the Fourth Circuit in Hines v. South Carolina Department of Corrections, 148 F.3d 353 (1998). The policy lacks a religious exemption, as plaintiff states, however the institutional medical department is authorized to issue "no shave" passes, which allow qualified inmates to maintain a one-quarter inch beard. Hinkle Aff. ¶¶ 4, 12. An inmate who refuses to comply with the grooming policy will face "disciplinary action and/or assignment to segregation." Id. at ¶ 4. Segregation is not a disciplinary measure, but a means of custodial or protective control. Id. at ¶ 5. According to the institution's records, plaintiff was charged with Offense Code 133, refusal to obey an order to comply with the grooming standard, and he was placed in pre-hearing detention. Id. at

---

[2] In his response to the Motion for Summary Judgment, plaintiff states that he does not currently hold a medical exemption from the shaving policy. However, in his Amended Complaint, plaintiff indicated that he did, in fact, hold an exemption: "Dr. Mogul stated plaintiff was exempt from shaving and released back to population." Am. Compl. 2. Defendant also asserts that plaintiff holds a medical exemption. Def's Brief at 5. Regardless of whether plaintiff is exempt from shaving, his First Amendment claims fail, as will be discussed below.

¶ 6. Following a hearing, plaintiff was assigned to segregation pending disposition of the charge. Id. at 9. After an officer dismissed the charges against plaintiff, he was released to general population on September 23, 2009. Id. at ¶ 11.

## II. Standard of Review

On a motion for summary judgment, a court must view the facts in the light most favorable to the party opposing the motion. Porter v. U.S. Alumoweld Co., 125 F.3d 243, 245 (4th Cir. 1997). Summary judgment is appropriate where there is "no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A "genuine" issue of material fact is present "if the evidence is such that a reasonable jury could . . . return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "When a motion for summary judgment is properly made and supported . . ., an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Unsubstantiated, conclusory claims without evidentiary support are insufficient to satisfy a non-moving party's burden on summary judgment. Carter v. Ball, 33 F.3d 450, 461-62 (4th Cir. 1994); Goldberg v. B. Green & Co., 836 F.2d 845, 848 (4th Cir. 1988). Moreover, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Anderson, 477 U.S. at 247-48) (internal quotation marks omitted). Accordingly, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a

3

court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Id.

### III. Analysis

The record demonstrates that plaintiff's rights under the Free Exercise Clause of the First Amendment were not violated. A prisoner's sincere desire to practice a religion may be burdened upon a showing that the restriction is reasonably related to legitimate penological interests. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). The Supreme Court has outlined three factors for lower courts to weigh in evaluating constitutional challenges to prison regulations: (1) a regulation must have a logical connection to the legitimate penological or governmental interests invoked to justify it; (2) the inmates should have alternative means of exercising their religious rights; and (3) accommodating the inmates' rights should not severely impact other inmates, prison officials, and the general allocation of prison resources. O'Lone, 482 U.S. at 350-52.

Hines is especially instructive in the application of the O'Lone factors to the VDOC grooming policy because that policy is essentially similar to the South Carolina grooming policy upheld in Hines; both policies prohibit beards and long hair based on the same security and penological concerns. In upholding the South Carolina policy, the Fourth Circuit found that (1) the policy was enacted to suppress contraband, limit gang activity, maintain discipline and security, and prevent inmates from quickly altering their appearances; (2) the inmates are allowed to practice other elements of their religions, and therefore they have alternative means of exercising their religious rights; and (3) searching inmates with long hair is less effective and more time consuming than searching inmates with short hair, and thus contraband is more likely to enter jails, safety of inmates

4

and guards is decreased, and more guards need to be hired. Hines, 148 F.3d at 358. The Fourth Circuit also noted that a neutral, generally applicable law does not offend the Free Exercise Clause, even if the law has an incidental effect on religious practice. Id. (citing Employment Div., Dept. of Human Resources of Oregon v. Smith, 494 U.S. 872, 876-79). And, a law is considered "neutral" if it makes no distinction between action based on religious conviction and action based on secular views. Id. In finding that the SCDOC grooming policy was neutral, the Fourth Circuit observed that the policy requires all male inmates, regardless of religion, to shave and wear short hair, and the court found no evidence suggesting that the law was enacted to burden anyone's free exercise rights. Id. at 357-58.

Sometime after Hines was decided, the SCDOC changed its grooming policy to permit forcible shaving of inmates who refuse to comply with the policy's rules on grooming. In Smith v. Ozmint, 578 F.3d 246 (4th Cir. 2009), the Fourth Circuit found that the new SCDOC grooming policy imposed a substantial burden on an inmate's religious practice within the meaning of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). The particular policy at issue in Ozmint provided that inmates "may be given forced haircuts or shaves if they refuse to comply with the haircut and shave schedule," and the plaintiff in that case had been forcibly shorn. Id. at 249. The Ozmint plaintiff had brought his case under RLUIPA, not under the First Amendment, and RLUIPA prohibits policies that place a "substantial burden" on an inmate's religious exercise. 42 U.S.C. § 2000cc-1(a). In distinguishing Ozmint from Hines, the Fourth Circuit emphasized that its holding in Hines was based on the established neutrality principle that if the object of an otherwise valid policy is not to burden the exercise of religion, but the policy merely has the incidental effect of burdening free exercise, then the Free Exercise Clause has not been offended. Ozmint, 578 F.3d

5

at 251. The neutrality principle does not foreclose liability under RLUIPA, and therefore the Fourth Circuit found that the grooming policy substantially burdened the plaintiff's religious exercise, in violation of RLUIPA. Id. at 251-52. In reaching this conclusion, the court focused its analysis on the forcible shaving aspect of the policy, finding that the policy in that case was starkly distinguishable from the policy in Hines, which did not allow for forcible shaving of noncompliant inmates. Id. at 254-55.

In a more recent case brought under RLUIPA, McRae v. Johnson, plaintiff inmates alleged that the VDOC's grooming policy[3] placed a substantial burden on their religious exercise, in violation of RLUIPA, by prohibiting them from wearing beards. The Fourth Circuit upheld the VDOC grooming policy, observing that "one of the key features of the VDOC's Grooming Policy that supports the district court's least restrictive means conclusion is that the [policy] does not mandate the forcible cutting of an inmate's long hair and/or beard. Rather, an inmate is allowed to keep his long hair and/or beard. If he does so, however, he is quite reasonably required to live in a segregated housing unit . . . where the safety, security, and health risks created by long hair and beards can be lessened by more restrictions on the inmate." McRae v. Johnson, 261 Fed.Appx. 554, 559 (4th Cir. Jan. 7, 2008).

The application to the case at bar of the three O'Lone factors and the principles iterated in Hines, Ozmint, and McRae, points convincingly to the conclusion that the VDOC grooming policy at issue in this case does not violate plaintiff's First Amendment rights. First, the policy has a logical

---

[3] It is unclear whether the grooming policy in effect at the time McRae was decided is the same grooming policy in effect today; the policy submitted as an exhibit by defendant Hinkle became effective June 1, 2007, whereas the McRae policy was dated July 1, 2003. Regardless of whether the policies are the same, it is clear that the element of the policy that was at issue in McRae, namely the prohibition on beards without a religious exception, is the same element that is at issue here.

connection to legitimate governmental interests, namely the VDOC's strong interest in "promot[ing] safety, security, and sanitation, and to facilitate the identification of inmates." Harris Aff. ¶ 4. Plaintiff here does not allege that he has no alternative means of exercising his religious rights. And this is so even after an initial order issued directing plaintiff to elaborate on whether he could or could not practice his religion in ways other than growing a beard. He did not do so. The McRae decision is dispositive as to the third O'Lone factor. In McRae, the Fourth Circuit there recognized and emphasized that the VDOC policy was implemented to address serious penological and governmental concerns. Specifically,

> [I]nmates had hidden contraband and/or weapons in their hair or beard, with one prison officer being injured while "trying to shake down an inmate and shake down his hair, and there was a razor blade or something in the hair . . . ." Director Johnson also testified that the VDOC's Grooming Policy significantly cuts down on the number of inmate shakedowns during which a prison officer must run his hands all through an inmate's hair and beard if he has one in order to check for hidden contraband or weapons. According to Director Johnson, prison officers are hesitant to perform shakedowns on long haired and/or bearded inmates, "inmates don't like you putting your hands all through the[ir] hair to start with," shakedowns are time consuming, and the VDOC does "not have enough staff to continually shake people down as they move from one area to another to prevent transporting contraband." In sum, the less need for shakedowns the better. This fact was illustrated by Director Johnson's testimony that approximately six months earlier, officers shaking down an inmate placed in administrative segregation for refusing to cut his hair "found pieces of wire and rope and rocks and tobacco . . . that were hidden in his hair."

McRae, 261 Fed.Appx. at 559. Precisely these same factors make clear that allowing religious exceptions to the VDOC grooming policy would pose serious problems for correctional center officials in Virginia. Therefore, under O'Lone, the grooming policy does not unconstitutionally infringe on plaintiff's First Amendment rights.

Moreover, the Fourth Circuit emphasized in Hines that the grooming policy at issue there made no distinction between action based on religious conviction and action based on secular views. The policy in Hines, as is true of the VDOC policy, is neutral, and any incidental effect it had on an

7

inmate's religious practice does not offend the Free Exercise Clause. Hines, 148 F.3d at 357-58. Likewise, in this case the VDOC grooming policy makes no religious-based distinctions, and there is no indication that the policy was implemented with intent to infringe on inmates' free exercise rights. In Ozmint, the plaintiffs' action was not brought as a Free Exercise claim, but rather as a RLUIPA claim, and therefore the analysis differed. Most significantly, the policy at issue in Ozmint allowed forcible shaving, whereas the policy at issue here does not.[4] And, significantly, the McRae court also emphasized that the VDOC policy did not allow forcible shaving when finding that the policy did not infringe on inmates' rights under RLUIPA. 261 Fed.Appx. at 559. Finally, and perhaps most tellingly, plaintiff admits several times in his amended complaint that he had refused to shave "due to his severe skin condition", making no mention of refusing to shave based on his religious observances. Am. Compl. 2, 3. Indeed, plaintiff states that a doctor ordered his release from segregation on medical grounds. Am. Compl. 2. Therefore, the record clearly demonstrates that plaintiff's First Amendment rights were not violated.

## IV. Conclusion

For the reasons stated above, summary judgment must be entered in favor of the defendant, and this case will be closed. An appropriate order shall issue.

Entered this 20th day of September 2010.

T. S. Ellis, III
United States District Judge

Alexandria, Virginia

---

[4] In his amended complaint, plaintiff specifically describes what happened when he refused to shave: "Plaintiff was ordered by Lt. Powell to shave and when he refused, was charged accordingly and placed in segregation." Am. Compl. 2. No force was used, and neither the amended complaint nor defendant's records suggest that plaintiff shaved his beard while in segregation.